PHILLIPPE ROBICHAUD

*vs.*

JAMES M. SPENCE.

Somerset.    Opinion May 8, 1914.

*Automobile.    Bicycle.    Collision.    Highway.    Negligence.    Unobstructed View.*

The plaintiff approaching saw the defendant before he attempted to turn and saw
him turn from the opposite side of Madison Street, tried to "shoot right across
to keep clear of the automobile," and in doing so, miscalculated and came in
contact with the automobile on the inside of the crossing on Bean Street.

*Held:* That the testimony convinces the Court that there was no negligence on
the part of the defendant, and that the plaintiff was injured solely by reason
of his own negligence and that the verdict for the plaintiff was manifestly wrong.

On motion for new trial by defendant.    Motion sustained.

This is an action on the case to recover damages for injuries to
the plaintiff's bicycle, caused by a collision with the defendant's
automobile on Madison Street, in Madison, in the County of Somerset,
in the evening of May 1, 1912.    The defendant pleaded the general
issue.

The jury returned a verdict for the plaintiff for $39.55 and the
defendant filed a general motion for a new trial.

The case is stated in the opinion.

*W. B. Brown,* for plaintiff.

*Bernard Gibbs, and Charles O. Small,* for defendant.

SITTING:    SAVAGE, C. J., SPEAR, KING, HALEY, HANSON,
PHILBROOK, JJ.

HANSON, J.    Action to recover damages sustained by the plaintiff
in a collision between his bicycle and the defendant's automobile on
the evening of May 1, 1912.    The jury returned a verdict for the
plaintiff in the sum of $39.55, and the case is before the court on
general motion to set aside the verdict.

The defendant was driving his automobile in a southerly direction on Madison Street, in the town of Madison, and was on the right side of the street. This street runs north and south and is three rods wide. Bean Street intersects Madison Street nearly at right angles, and is also three rods wide. The defendant was approaching Bean Street. The plaintiff on his bicycle was riding northerly on Madison Street, and also approaching Bean Street. All the lamps on the automobile were lighted. There was no light on the bicycle. The plaintiff was on the right side of the street as he travelled. The defendant, desiring to turn to his left and enter Bean Street, says that he sounded his horn, gave the usual alarm, and made the turn into Bean Street, and while in the exercise of due care, and with no knowledge of the approaching bicycle, collided with it, and immediately applied the brakes and stopped his automobile within four feet of the point of collision. That it was dark enough to require lights is evident.

The plaintiff contends that the injuries complained of were caused solely by the negligence of the defendant, that no alarm was sounded, and that the defendant was driving at an unlawful rate of speed, and was not in his proper place on the street at the time of the collision. The plaintiff's counsel insists that "if the horn was blown it was no notice to the plaintiff that the defendant intended to turn to his left into Bean Street, and finally when he did see him turn, the plaintiff had no reason to believe that the auto would persist in trying to pass in front of his course, instead of swinging to the right and passing by and behind the bicyclist—the obviously safe and sane course for the autoist to follow under all the circumstances."

The case shows that the plaintiff saw the defendant's automobile approaching him on Madison Street while at least two hundred feet distant; the automobile was on the right side of the street, the plaintiff crossed to the other side of Madison Street on seeing the defendant and kept on his way. Bean Street was between the two and on the plaintiff's right, and they were approaching that street with the automobile in plain view of the plaintiff. The defendant sounded his horn before turning into Bean Street, and the plaintiff's actions thereupon may be stated in his own language: "Well, when I started down on Madison Street, and then I got to Bean Street; I seen that automobile come up and when I saw the automobile I turned right on to my right, and before I got across Bean Street this automobile struck

me." He was asked: "Q. Were you expecting to go down Bean Street at all? A. No I didn't; I did not; he never blowed, he never tooted his horn at all. The first thing that noticed me was his light; then it was too late to turn, so I had to keep on going. Q. Weren't you trying to make the sidewalk ahead of the machine? A. I was trying—when I see him coming across there I see that he was going to run pretty close to me, and I sheered off that way to go clear of him towards the sidewalk; it was too late to turn around: I could not get off; I was right in the middle of the road. Q. You weren't intending to take the sidewalk? A. No, until that automobile struck me, I shoot right across to keep clear of this automobile."

The theory advanced by the plaintiff's attorney is that the defendant in turning into Bean Street passed within 18 inches of an electric light pole, making a curb turn in the wrong way,—"a left curb turn, keeping to his extreme left in both streets, while, on the contrary, the plaintiff kept to his extreme right until struck;" but the theory is not supported by the testimony. The plaintiff says he was in the middle of the road, the defendant says his automobile was twelve feet from the electric light pole, and they are in substantial agreement upon the point, as Bean Street is 23 feet and 6 inches between the shoulders of the road.

The testimony is overwhelming that the defendant was driving his automobile at a low rate of speed, "not over four or five miles an hour," while on Madison Street and in making the turn into Bean Street. He saw no person or vehicle approaching on Madison Street, and there was no person or vehicle on Bean Street. The plaintiff approaching saw the defendant before he attempted to turn, and saw him turn from the opposite side of Madison Street, as above described by the plaintiff. At that instant the two vehicles were not less than 40 feet apart. The plaintiff seeing the defendant, and appreciating what he intended to do, tried to "shoot right across to keep clear of the automobile," and in doing so miscalculated, and came in contact with the automobile on the inside of the crossing, on Bean Street.

The defendant did not see the plaintiff until the collision occurred, and his judgment of the speed of his automobile is corroborated by many witnesses, and not disputed by the plaintiff. That he stopped his automobile in less than half its length is shown by witnesses on both sides. Two courses were open to the plaintiff, one to do as he says he did, to shoot right across in front of the automobile, the other

to direct his bicycle the other way, and pass the automobile behind, where from his own statement his course was free and unobstructed, and to be attended with no danger if he exercised due care, and too, within the limits of Madison Street, which was all open to him as disclosed by the evidence.

The testimony convinces the court that there was no negligence on the part of the defendant, that the plaintiff was injured solely by reason of his own negligence, and that the verdict for the plaintiff was manifestly wrong.   The entry must be,

*Motion sustained.*